# PORTO RICO
# FEDERAL REPORTS.

FRITZE, LUNDT, & COMPANY

*v.*

ESPERANZA CENTRAL, etc.,

and

WILLIAMSBURG TRUST COMPANY

*v.*

ESPERANZA CENTRAL SUGAR COMPANY.

San Juan, Equity, Nos. 508 and 589.

1. The effort of complainants, in a suit in which they induced the court to appoint a receiver and create large debts, to have their own claim preferred as against the bondholders, when such effort is only made after final decree, will not be considered. Their remedy is an appeal from the final decree.

2. *Quære:* Whether chapters 2 and 3 of Classification of Credits, §§ 1822 to 1826 inclusive, of the Civil Code of Porto Rico of 1902, can, as a whole, be said to be in force in the face of the national bankruptcy act of 1898.

3. Contracts under which money is advanced to sugar centrals, and the repayment of which money is to be made by the lender's retaining a portion of the proceeds of the monthly deliveries of sugar, to be made by the mill to him, no matter what the parties designate such con-

V. Porto Rico—1.

Fritze, Lundt, & Co. v. Esperanza Central.

tracts in the instruments, are not true "contratos de refacción" in the sense of subdivision 3, § 1824, of the Civil Code of Porto Rico of 1902; and if the sugar central becomes insolvent, and goes into the hands of a receiver before the money is all repaid, the holders of such contracts, especially when not annotated in the registry, are general creditors only, and are not entitled to any preference.

4. Where a mortgage or trust instrument given to secure an issue of bonds covers not only the property then possessed and specifically described, but all the property to be acquired for the purposes intended, on foreclosure of the trust instrument, the bondholders are entitled to have the same foreclosed as to all the property thus acquired, as against mere general creditors.

5. Notwithstanding that, under the provisions of § 3 of the joint resolution of Congress of May 1, 1900, a corporation in Porto Rico may not be entitled to own or control more than 500 acres of land, still the matter of so holding such excess of land is for the government itself to correct, in a proper proceeding where it is in issue, and it is not for the general creditors of the insolvent concern to raise the question collaterally in a suit to foreclose the trust instrument given to secure bonds.

Memorandum filed July 1, 1909.

———

*Messrs. Herminio Diaz* and *Martin Travieso, Jr.,* attorneys for Fritze, Lundt, & Company.

*Mr. Henry F. Hord,* attorney for Esperanza Central Sugar Company.

*Mr. F. H. Dexter,* attorney for Williamsburg Trust Company.

RODEY, Judge, delivered the following opinion:

The matter before us at the present time for consideration is a petition filed about a week ago, on June 23, 1909, by the

Fritze, Lundt, & Co. v. Esperanza Central.

complainants in suit No. 508 above, for leave to file what they call an intervening petition in the suit as now consolidated, for the purpose of having themselves declared to be creditors entitled to a preference over all debts of the said concern, except the expenses of the court in conducting the receivership and the debts created and represented by receiver's certificates as heretofore issued. Full oral argument was had before us two days ago on this application.

We haven't the time to go into much detail in expressing our views regarding this application, but a short statement of the condition of the litigation is necessary. The respondent, the Esperanza Central Sugar Company, some three years ago or more was organized under the laws of the state of New York. Through its manager, one C. J. Field, it purchased land and proceeded to erect a sugar factory near Naguabo on this island. It spent a large amount of money in and about the premises, but, unfortunately, when the sugar mill was erected, for one reason or another, because of inadequate and improper machinery, it proved a failure. Through its said manager it had made a number of contracts in the community and created a large amount of debts, including one under date of December 24, 1906, with the petitioners, Fritze, Lundt, & Company, upon which it received an advance of $45,000, and was to return the same with interest, by payments of 20 per centum monthly of the proceeds of the sugar to be ground during the coming and another season, the latter to take out their 20 per cent and pay over the balance. This sugar it contracted to deliver to the petitioners.

As stated, the concern proved almost a total failure, and hence but very little sugar was delivered to the petitioners,—in fact

only enough to reduce the debt about $2,000, so that the present claim is over $43,000. This same manager of the sugar company also negotiated two other transactions about the same time, or shortly thereafter, with Fritze, Lundt, & Company, one amounting to $35,000 and the other to about $15,000, as appears by a sort of memorandum or agreement made between the parties under date of the 25th of June, 1907; but as to the $35,000 item, and perhaps as to the other,—but of the latter we are not sure,—one Edwin Packard and one Charles Sweeny, who were bondholders of the sugar company, paid off the same, and are now general creditors therefor as to one, if not both, of the items.

Because of this unfortunate failure, the petitioners and many other creditors brought attachment suits in the insular courts, before any suit was filed in this court regarding the matter at all. However, in October, 1907, for what reasons we do not know, the petitioners, Fritze, Lundt, & Company, as the principal parties, but joined by all the other attaching creditors, made up their minds to dismiss their attachment suits in the local courts, and came to this court and filed a bill of complaint showing their debt, and requesting the appointment of a receiver to conserve the property so that all of its liabilities might be paid, which their counsel stated in argument could be done, which application, after a set of lengthy hearings, was finally granted. We were induced through petitioners' solicitation, and that of the other creditors, as well as persons representing the bondholders, to issue receiver's certificates, at first in about the sum of $150,000, and to create other debts that now make the debt reach something like $220,000 or more.

Much to our surprise, on February 8, 1908, this present

Fritze, Lundt, & Co. v. Esperanza Central.

petitioning firm, complainants in the original suit No. 508 aforesaid, came in and, in their said own suit, filed a motion, annexing their contracts to it and asking us to have them declared preferred creditors, even to the exclusion of the receiver's certificates, which they themselves caused us to issue, and, of course, to the entire exclusion of the bondholders and other creditors. We denied their application in a short order filed under date of March 14, 1908, but did not very definitely shut them out regarding their claim to be preferred.

Thereafter, through practically a year and a half of litigation and of management under a receiver of that plant and property by this court, and through all its struggle with the bondholders and the debts of the concern, these petitioners and their attorneys remained studiously silent, and have done nothing to either aid the court or assert any preference claimed by themselves.. They continued in this course of action through all the efforts at reorganization of this unfortunate business concern, and refused to come in with the other creditors and help in the reorganization or take stock or otherwise aid in the same, as the court was informed in the argument that has just taken place regarding their present claim. They continued in this attitude until a master had been appointed and an expert accountant had been appointed, and until the cause went to final decree, which was entered under date of June 1, 1909, just one month ago. And even then, for twenty-three days additional, did nothing until they came into court several days ago, and filed their motion, and tendered an elaborate intervening petition, as they call it, praying for relief as aforesaid and asking, in effect, that the sale be prevented from taking place on the 6th instant as advertised, or else that their claim of something over $43,000 be paid in full or the money set aside for that purpose.

Fritze, Lundt, & Co. v. Esperanza Central.

We have examined their two alleged contracts, that of December 24, 1906, and June 24, 1907, in the light of their claim that the same, under § 1824 of the Civil Code of 1902 of Porto Rico, is a preferred claim. We find that there are, in Porto Rico, several sections of the Civil Code entitled, "Classification of Credits," beginning with § 1822 and ending with § 1826. We have heretofore been many times asked to hold that these sections of the law fix, in Porto Rico, the order of preference to which certain creditors are entitled. After examining those sections we are of opinion that several of them can have no force in the face of the national bankruptcy act, and § 1824, save as to taxes, which would be so in the absence of any statute, is of doubtful validity as to several of its provisions, and certainly cannot be held to be in force as against other creditors, save where the agricultural contract has been recorded. It was admitted in argument that the contracts in question have not been recorded in the registry of property. But apart from all this, we find that it is not necessary to hold, as to these particular contracts, that they give complainants any preference as being refacciones or agricultural contracts, because, no matter what they are designated, on their face, taken as a whole, they show that they are not in fact such, and are nothing more than a banker's contract with a borrower. The whole concern having become insolvent, there is, in our opinion, nothing in their contracts that gives them any preference over any other general creditor.

The effort petitioners are making is anomalous in the extreme. They come into court at the eleventh hour, when they are bound by all the proceedings in the cause, as they are the complainants, and attempt to assert this preference, and to stop the sale

Fritze, Lundt, & Co. v. Esperanza Central.

of this large amount of **property**, and to thwart the entire reorganization, that we are informed is happily about to take place, because purchasers for such a large concern are scarce, and which reorganization, if further delayed, will probably be entirely prevented. This laches, as and of itself, should militate against them, but we do not put our holding upon that ground, reasonable though it is.

The bondholders and their friends, no doubt presumably because of the attitude of these present petitioners, have gone to vast trouble and expense, and have furnished large amounts of money to rehabilitate this plant, and to enable the court to carry on the receivership and make the reorganization even possible. Some of these bondholders are unsecured creditors in amounts much larger, in fact even twice as large as the claim of petitioners.

Petitioners did not request specific performance of their contract in the first instance, but refrained from so doing; and they are not even asking for that now, but simply asking for a preference as against all debts except the receiver's certificates.

As found by the master, their debt for $43,251.63 is nothing but an ordinary unpreferred debt, for which they have no lien in law and are entitled to no preference. There are, as stated, other creditors, and even outside of those mentioned, to whom the concern owes large sums, and this exclusive of the expenses of the court, the receiver's certificate, and the bonds, and we cannot see that those petitioners have any better right than they have.

The bondholders of the concern at the time of the application for the receiver, realizing the situation, came in and consented to the receivership, presumably at the request of these petition-

ers, who were complainants in that suit, or their attorneys; but
as to that we can only judge from the facts appearing from the
record and the occurrences before us.   Thereafter the bond-
holders brought suit No. 589 above, to foreclose the mortgage
given to secure their bonds, which amounted to $300,000 with
interest, and had the same consolidated with complainants' suit.
It is unfortunate, of course, that the concern probably will not
bring enough money to pay any more than the indebtedness
created under the receivership, in addition to paying off the
whole or some portion of the bonds.   It is also unfortunate
that the concern has not, as it was expected it would, proved to
be such a profitable concern as that it would in time pay off all
the debts, as complainants and the other creditors no doubt
thought when they brought their original suit, or at least induced
the court here to believe.

This is not the time or place to comment upon the attitude
of complainants who will thus induce a court to take charge of
a concern by its receiver, and then attempt in this way, at this
late day, in their own suit, to gain a preference over those whom
they alleged no preference against at the start.   Of course,
neglect in this regard can only be attributed to themselves and
the counsel that have been in the case for them from the start.

At the recent hearing it was also urged that the mortgage
given to secure the bonds covers only a part of the land that is
now about to be sold under the decree.   The answer to this is
that the mortgage is one which specifically covered not only the
property then possessed but afterwards to be acquired, and this
independent of the provisions of § 1812 of the local Civil Code
of 1902.   In fact we might say that this acquired property
is the one thing that enables a sale to take place at all, as a sale

Fritze, Lundt, & Co. v. Esperanza Central.

of a central on a smaller quantity of land would be hard to make.

The contention made by these petitioners on the hearing that this sugar factory corporation is not permitted under § 3 of the act of Congress of May 1, 1900, to hold more than 500 acres of land, is ineffectual at this time and place, and we are not passing upon the same. That may be matter for the government to look into and take action on, whenever it chooses. We do not think it lies in the mouths of these petitioners to complain of that here in this proceeding.

Complainants are, in our opinion, entitled to no preference. The facts, their contracts, and the law do not permit it. If, by any fortuitous circumstance, the property on the sale brings more than sufficient to pay the expenses of the court, the receiver's certificates, and the bonds, it will be a pleasure for us to make an order distributing the surplus *pro rata* to petitioners and the other creditors.

Leave to file this so-called intervening petition is therefore denied, and an order to that effect will be entered.

It may not be out of place, and may avoid useless effort, for us to intimate at this time that the court will not tolerate any illegal or uselessly dilatory interference with the course of the sale it has mapped out of this property, unless the same is in strict accordance with law, and suggest that the remedy of these petitioners is to take an appeal from the decree rendered in their own cause in this court, as the same is above consolidated, and they will be afforded every facility legally possible or proper to enable them to do so.